UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANICE C. SPECHT and | : | Case No. 1:13-cv-705 |
| JON HOFFHEIMER, CO-FIDUCIARIES | : | |
| OF THE ESTATE OF | : | Judge Timothy S. Black |
| VIRGINIA L. ESCHER, | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 13)**

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 13) and the parties' responsive memoranda (Docs. 14, 17).

## I. BACKGROUND

Plaintiffs Janice Specht and Jon Hoffheimer bring this litigation as co-fiduciaries of the estate of Virginia Escher, seeking to recover the sum of $1,198,261.38 in penalties and interest, which the Internal Revenue Service ("IRS") imposed upon the Escher estate as a result of its failure to timely file its estate tax return and to pay the estate tax owing in a timely fashion.

The legal question is simple: Whether Plaintiffs' failure to timely file the United States Estate (and Generation-Skipping Transfer) Tax Return and to timely pay the estate taxes was due to reasonable cause and not willful neglect. However, the factual circumstances are both complex and sad.

Virginia Escher passed away on December 30, 2008 at the age of 92. Her estate was worth approximately $12,506,462. Plaintiff Janice Specht, Ms. Escher's cousin, was asked to be the executor of the estate. Mrs. Specht, then 73, was a high-school-educated homemaker who had never served as an executor, held no stock, and had never been in an attorney's office. Mrs. Specht selected Ms. Escher's attorney, Mary Backsman, to assist her.

Ms. Backsman had over 50 years of experience in estate planning, but unbeknownst to Mrs. Specht, was privately battling brain cancer. Ms. Backsman deceived Mrs. Specht (whether intentionally or unintentionally), as to the status of an extension regarding the filing of the estate's tax returns. That deception eventually led to malpractice claims and the voluntary relinquishment of Ms. Backsman's law license.[1]

Plaintiffs argue that reasonable cause exists for failure to timely file and pay estate taxes, because their failure was due to their reliance on the attorney who was entrusted to handle the estate. Defendant maintains that courts have recognized a non-delegable nature of the duty to make timely filings of tax returns and have held that reliance on counsel is not sufficient to constitute reasonable cause for the failure to file a return or pay a tax.

---

[1] Ms. Backsman has since been declared incompetent and is now subject to a guardianship over her person and estate.

## II. UNDISPUTED FACTS[2]

1. Virginia Escher passed away on December 30, 2008, at the age of 92. (Doc. 13-3).

2. Virginia Escher's Estate (the "Estate") was worth approximately $12,506,462. (Doc. 13-4).

3. Escher's will named her cousin, Janice Specht, as executor of the Estate. (Doc. 13-6).

4. The Estate's federal estate tax return was due on September 30, 2009. However, the Estate did not file its federal return until January 26, 2011. (Doc. 13-4).

5. When the Estate filed its federal return it paid $3,909,951.00 in tax, plus $210,601.74 in interest. (Doc. 13-5). The Estate later paid $1,189,261.38 in penalties assessed due to the Estate's failure to file and failure to pay until over 15 months after the deadline. (Doc. 1 at ¶ 9).

6. In April 2008, Virginia Escher hired Attorney Mary Backsman to write her will. Ms. Escher, accompanied by Specht, met with Attorney Backsman at Backsman's office. (Doc. 13-7 at 10-11). Specht observed that Backsman's office was small and cluttered. (*Id.* at 15).

7. During this meeting, Ms. Escher asked Specht to be the executor of the will. Specht accepted that duty, and witnessed the will. (Doc. 13-8 at 20).

8. Shortly after Ms. Escher's death, Specht hired Backsman to represent the Estate. (Doc. 13-9 at ¶ 4).

9. In January 2009, Backsman told Specht that the Estate owed approximately $6 million in federal estate tax. The bulk of the Estate's assets were held in UPS stock, and Attorney Backsman informed Specht that the Estate would need to sell its UPS stock to cover the tax liability. (Doc. 13-7 at 25-26; Doc. 13-11 at 11).

10. On February 9, 2009, Specht and Backsman signed the Application for Authority to Administer Estate ("Application"). (Doc. 13-12; Doc. 13-7 at 52).

---

[2] *See* Doc. 13 and Doc. 15.

3

11. Specht read the Application, and when she signed the Application, she understood that being executor of an estate is a serious matter, that she had an obligation as a fiduciary, and that she had responsibilities that went along her obligation. (Doc. 13-7 at 53).

12. On February 9, 2009, Specht also signed the Fiduciary Acceptance Form ("Fiduciary Form") formally accepting her duties as executor of the Estate. The Fiduciary Form explained Specht's duties as executor of the estate in nine short, numbered paragraphs. (Doc. 13-13).

13. The Fiduciary Form states "I, as the undersigned, hereby accept the duties which are required of me by law, and such additional duties as are ordered by the Court." The Fiduciary Form then specifically outlines nine duties that the executor of the estate "will" do. Among these nine specific duties are: (1) "Give notice of the admission of the will to probate to all heirs and beneficiaries within 2 weeks and file a certificate of notice of probate of will within 2 months"; (2) Make and file an inventory of estate assets within three months; (6) Make and file a final accounting within six months; and "(7) File all tax documents as required by law." (Doc. 13-13 at ¶¶ 1, 2, 6, 7).

14. Specht read the Fiduciary Form, and although she did not understand the meaning of the term "fiduciary," she did not ask Backsman to explain the Fiduciary Form, nor did she ask Backsman about the scope her duties. (Doc. 13-7 at 80-81).

15. When asked whether she knew if various obligations listed on the Fiduciary Form were done on time, Specht testified, "No. I don't know." (Doc. 13-7 at 81-82).

16. When asked if she was "ever concerned about making sure that the things in the fiduciary duties on this list were done on time," Specht testified, "No." (Doc. 13-7 at 82).

17. Backsman told Specht that the Estate's federal return needed to be filed and the taxes paid by September 30, 2009 ("Estate Tax Deadline"), nine months after Ms. Escher's death. (Doc. 13-7 at 21; Doc. 13-10 at ¶ 6). *See* 26 U.S.C. §§ 6018(a), 6075(a) (providing that an estate tax return must be filed nine months following the decedent's death where the gross estate exceeds the excluded amount under section 2010(c)).

4

18. Specht was aware that this was an important deadline and that there would be consequences if the Estate did not file its federal estate tax return on or before the Estate Tax Deadline.  (Doc. 13-7 at 23; Doc. 13-10 at ¶ 7).

19. The Estate Tax Deadline is the only major deadline that Specht and Backsman discussed.  (Doc. 13-10 at ¶ 7).

20. No federal estate tax return was filed on or before September 30, 2014, nor was an extension sought.  (Doc. 13-4).

21. No federal estate tax payment was made on or before September 30, 2014.  (Doc. 13-4).

22. Specht never attended any probate hearings in the nine months before the deadline to file and pay federal estate taxes expired.  (Doc. 13-7 at 24).

23. When asked if she took "any steps to sell the stock before the initial nine months," Specht testified, "No."  (Doc. 13-7 at 25).

24. Specht was not surprised when she found out the Estate Tax Deadline was missed because she knew the taxes had not been paid.  (Doc. 13-7 at 36).

25. Prior to September 30, 2009, Specht received around four notices from the probate court warning her that Backsman was failing to perform her duties, and that the Estate had missed probate deadlines.  (Doc. 13-7 at 73; Doc. 13-17; Doc. 13-10 at ¶ 10).

26. When Specht asked Backsman why she missed a deadline, Backsman told Specht that they had an extension and that she was handling it.  (Doc. 13-10 at ¶¶ 14-15; Doc. 13-7 at 75).

27. Although Specht believed that Backsman had requested and received an extension of the Estate Tax Deadline, Specht never signed, saw or asked to see any extension forms.  (Doc. 13-7 at 23).

28. Before June 7, 2010, Specht received two notices from the probate court warning her that Backsman had failed to file a first accounting of the Estate's assets. (Doc. 13-10 at ¶ 22).

29. In July 2010, the Rotterman family, another family that had hired Backsman as an attorney for an estate, called Specht to inform her that they were seeking to have Backsman removed as co-executor of their family member's estate because Backsman was incompetent. (Doc. 13-10 at ¶¶ 25-26).

30. After receiving these calls, Specht met with Backsman, who told her things were going fine. Backsman had Specht sign a blank paper that Backsman said would allow her to sell the UPS Stock. (Doc. 13-10 at ¶ 28).

31. At some point after this, Backsman told Specht that a letter was sent to UPS to facilitate the sale of the stock. (Doc. 13-7 at 50).

32. On August 13, 2010, Specht received a notice from the Ohio Department of Taxation, written by Brent Bowers, warning Specht that the Estate's Ohio state tax return had not been filed and was delinquent. (Doc. 13-16; Doc. 13-7 at 77; Doc. 13-10 at ¶ 29).

33. Mr. Bower's August 13, 2010, letter further informed Specht that the Ohio Department of Taxation had not received any responses from Backsman, and alerted Specht that tax adjustments may be issued for her failure to pay the Estate's Ohio tax liability. (Doc. 13-16).

34. In September 2010, Specht called Mr. Bowers regarding a second letter from the Ohio Department of Taxation concerning the Estate's delinquent state tax return. (Doc. 13-7 at 49; Doc. 13-17).

35. Owing to these numerous warnings, Specht began to be concerned about Backsman's abilities; however, Specht did not consider consulting with another attorney at this time. (Doc. 13-7 at 68).

36. On both September 14 and 21, 2010, the Rotterman family called Specht telling her that she should hire a different lawyer. (Doc. 13-7 at 43; Doc. 13-17).

37. After both phone calls, Specht contacted Attorney Vincent Salinas, who told her that she needed to hire an attorney other than Backsman. (Doc. 13-7 at 44-45).

38. Specht took no other action in response to these warnings. (Doc. 13-7 at 47).

39. In September 2010, Specht called Mr. Bowers after he sent her another notice about her delinquent state tax return. (Doc. 13-7 at 49-50; Doc. 13-17).

6

40. On October 27, 2010, Specht called UPS and learned that UPS had never received a letter from Backsman requesting the sale of the Estate's UPS stock holdings. (Doc. 13-7 at 62; Doc. 13-17).

41. On November 1, 2010, Specht terminated Backsman and hired attorney Salinas to represent the Estate. (Doc. 13-7 at 52; Doc. 13-14).

42. On November 12, 2010 the Estate sold 45,280 Shares of UPS Stock at $67.89 per share for a total amount of $3,073,922.00. On November 24, 2010, the Estate sold 120,000 shares of UPS stock at $68.76 per share for a total amount of $8,251,715.00. (Doc. 13-20).

43. The UPS stock produced a net increase of $2,512,907.00 plus $608,230.00 from the date of death to the dates of sale. (Doc. 13-7 at 59; Doc. 13-18 at ¶ 5).

44. On January 26, 2011, the Estate filed its tax return and paid its tax liability and interest. (Doc. 13-4).

45. The Internal Revenue Service assessed mandatory penalties against the Estate on the grounds that the Estate failed to file its return and to pay its tax liabilities by the Estate Tax Deadline. *See* 26 U.S.C. § 6651 (a)(1), (a)(2). (Doc. 13-11). Interest also accrued after the Estate Tax Deadline. (Doc. 1-1 at 4).

46. The Estate pursued a malpractice action against Backsman based on the late filing and payment penalties assessed by the IRS. The malpractice action was settled on January 23, 2012. (Doc. 13-19).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

7

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.   ANALYSIS

The Tax Code provides for mandatory additions-to-tax (commonly referred to as penalties) for the: (1) failure to timely file a return, 26 U.S.C. § 6651(a)(1), and (2) failure to timely pay a tax, 26 U.S.C. § 6651(a)(2). With respect to Section 6651, the Supreme Court has stated that "Congress' purpose in the prescribed civil penalty was to ensure timely filing of tax returns to the end that tax liability will be ascertained and paid promptly." *United States v. Boyle*, 469 U.S. 241, 245 (1985). However, these penalties are not owed if the taxpayer can establish that the failure is "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1) (failure to file); (a)(2) (failure to pay). Under this exception, "the taxpayer bears the heavy burden of proving both": (1) that the failure was due to reasonable cause; and (2) that the failure did not result from willful neglect. *Boyle*, 469 U.S. at 245.

The Estate does not contest that it failed to timely file or pay the estate tax. The only issue is whether these failures were due to "reasonable cause and not due to willful neglect."

### A. Reasonable Cause

Reasonable cause is not defined in the Internal Revenue Code. However, Treasury Regulations require the estate to demonstrate that it "exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Boyle*, 469 U.S. at 246 (quoting 26 C.F.R. § 301.6651(c)(1)). In *Boyle*, the Supreme Court held that "[t]he failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under Section 6651(a)(1)." 469 U.S. at 248. In *Boyle*, the Supreme Court recognized a distinction between a taxpayer who "has relied on the erroneous advice of counsel concerning a question of law," and a taxpayer who has retained an attorney to attend to "an unambiguous, precisely defined duty to file" a return by a certain time. *Id.* at 250. Although a taxpayer may reasonably rely on advice received from an attorney "on a matter of tax law … one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due." *Id.* at 251.[3]

For example, in *Valen Mfg. Co. v. United States*, 90 F.3d 1190 (6th Cir. 1996), a corporation sought to avoid both failure-to-file and failure-to-pay penalties imposed when

---

[3] "Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations. Engaging an attorney to assist in the probate proceedings is plainly an exercise of the "ordinary business care and prudence" prescribed by the regulations, 26 C.F.R. § 301.6651-1(c)(1), but that does not provide an answer to the question we face here. To say that it was 'reasonable' for the executor to assume that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the executor's obligations under the statute. Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute." *Id* at 249-50.

its hired bookkeeper not only failed to file the appropriate tax returns and make the required tax deposits, but actively concealed the delinquencies from her employer. *Id.* at 1191. The Sixth Circuit affirmed the district court's granting of summary judgment quoting *Boyle*: "the relevant Treasury Regulation calls on the taxpayer to demonstrate that [it] exercised 'ordinary business care and prudence' but nevertheless was unable to file the return within the prescribed time." *Id.* at 1192 (citing 26 C.F.R. § 301-6651-1(c)(1)). The court rejected the taxpayer's argument that it had exercised ordinary business care and prudence by hiring several "outside" companies that would review its employees' work. "'Ordinary care and prudence' requires more than mere delegation." *In re Carlson*, 126 F.3d 915, 922 (7th Cir. 1997).[4]

     Plaintiff cites *Brown v. United States*, 630 F. Supp. 57 (M.D. Tenn. 1985), a case decided the same year as *Boyle* and before the controlling precedent of *Valen* and its progeny. Aside from the fact that *Brown* is an outlier,[5] the facts are distinguishable. In *Brown*, the court found that the taxpayer was not capable of complying with the deadline for timely filing the estate tax return, because he was unaware of the deadline. 630 F. Supp. at 59-60. Here, there is no question that Mrs. Specht knew the estate tax deadline. Although the Plaintiffs argue that Backsman's statements that extensions were granted is

---

[4] In *Estate of Ridenour v. United States*, 468 F. Supp.2d 941 (S.D. Ohio 2006), the court addressed cross-motions for summary judgment in a suit where an estate plaintiff sought a refund of failure-to-file and failure-to-pay penalties. Plaintiff argued that reasonable cause existed for late filings and late payment because the estate hired an experienced probate attorney. However, the Court granted summary judgment in favor of the United States, holding that neither reliance on counsel nor the complexity of the estate could constitute reasonable cause for late filing and late payment of tax. *Id.*

[5] The Court cannot find any case that has followed *Brown* to excuse a taxpayer from penalties under Section 6651.

equivalent to Mrs. Specht not knowing the deadline, such misrepresentations cannot constitute reasonable cause. Whether a request for extension of time was filed and granted is an issue of fact not a question of law. Further, in *Brown*, the court made an affirmative finding that the *plaintiff* was "not physically and mentally capable" of complying with the filing deadline. 630 F. Supp. at 60.

Here, Mrs. Specht argues that she lacked the sophistication to single-handedly complete and file the estate's federal tax return. However, there is no evidence to suggest that she lacks the sophistication to understand the importance of the estate tax deadline or to ensure that deadline was met. Mrs. Specht relied on an agent to file tax returns and the agent failed to do so. However, as the Sixth Circuit states, "[f]orgiveness of penalty assessments levied against taxpayers who could exert greater controls and exercise greater levels of personal responsibility would only encourage late filings and payments to the IRS." *Valen*, 90 F.3d at 1194. The bright line rule articulated by the Supreme Court in *Boyle* and by the Sixth Circuit in *Valen Manufacturing* makes clear that the reasonable cause analysis looks at the party with ultimate responsibility for satisfying the tax liabilities, not the actions or medical conditions of their agent. While Plaintiff argues that the failure to meet the tax deadline resulted from circumstances largely beyond her control, there is no evidence to support a finding that she was an executor without the ability to control whether the deadline was met.

Accordingly, even though Plaintiff hired counsel to handle the estate, reliance on counsel cannot constitute reasonable cause for the late filing and payment of taxes. Even

if Backsman's medical condition led her to malpractice in the course of representing the Estate, this did not render Mrs. Specht "disabled."

### B. Willful Neglect

In addition to the reasonable cause requirement, to escape penalties under Section 6651, the Estate must also meet the heavy burden of proving that the late filing and payment did not result from willful neglect. *Boyle*, 469 U.S. at 245. Willful neglect is "a conscious, intentional failure or reckless indifference." *Id.* However, mere carelessness is enough for a taxpayer to be denied a refund based on the exceptions in Section 6651. *Id.* at 245 n.4 ("[a] taxpayer seeking a refund must therefore prove that his failure to file on time was the result neither of carelessness, reckless indifference, nor intentional failure.").

For example, in *Vaughn v. United States*, No. 1:12cv3135, 2014 U.S. Dist. LEXIS 105766 (N.D. Ohio June 27, 2014), a former Major League Baseball player filed a lawsuit alleging that tax penalties levied against him violated Section 6651. Specifically, his financial advisor failed to timely file his taxes and embezzled millions of dollars from him. However, the court found that despite the fact that Plaintiff tried to be proactive in seeking professionals to manage his finances and taxes, the ability to pay his taxes was not beyond his control and therefore he could not prove that the late filing did not result from willful neglect.

Mrs. Specht was aware that the Estate's federal tax return needed to be filed and paid nine months after Ms. Escher's death on September 30, 2009; that the tax liability

12

was approximately $6,000,000; and that the Estate would need to sell its UPS stock to cover the tax liability.  Mrs. Specht further understood that the September 30, 2009 deadline was important, and that missing the deadline would result in consequences.  In the months prior to the estate tax deadline, Mrs. Specht received at least four notices from the probate court informing her that the estate was missing probate deadlines.  After the deadline, Mrs. Specht received at least two additional noticed from the probate court warning that Backsman had failed to file a first accounting of the Estate's assets; numerous calls from the Rotterman family informing Specht that Backsman was incompetent; two letters from the Ohio Department of Taxation informing Specht that the state tax return was delinquent; and a warning from another attorney – whom she eventually hired to replace Backsman – informing her that she needed to hire another attorney.

Serving as the executor of a probate estate is clearly not an easy task, which is why Mrs. Specht trusted an attorney to guide her through the process.  While this Court finds it difficult to hold that Plaintiffs are ultimately responsible for Ms. Backsman's malpractice, that is what binding precedent requires.  Notably, in light of Ms. Backman's malpractice, the State of Ohio refunded the late filing and payment penalties for Ohio estate taxes without the Estate filing a refund suit. (Doc. 16, Ex. 2 at ¶ 14).  It is truly unfortunate that the United States did not follow the State of Ohio's lead.

## V. CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment (Doc. 13) is **GRANTED**.  The Clerk shall enter judgment accordingly, whereupon this case shall be **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:  1/6/15                                                               */s/ Timothy S. Black*
                                                                            Timothy S. Black
                                                                            United States District Judge

14